1

2

3                    UNITED STATES DISTRICT COURT

4                    EASTERN DISTRICT OF CALIFORNIA

5

6   CHRISTOPHER M. SOUZA,              1:07-CV-01817 OWW DLB

7              Plaintiff,

8       v.                            MEMORANDUM DECISION AND ORDER
                                      RE GRANTING DEFENDANT'S
9   PACIFIC BELL TELEPHONE            PACIFIC BELL TELEPHONE COMPANY
    COMPANY, INC., AT&T               MOTION TO DISMISS AND MOTION
10  COMMUNICATIONS OF CALIFORNIA,     TO STRIKE PLAINTIFF'S
    INC., SBC COMMUNICATIONS,         COMPLAINT 12(b)(6) AND 12(f)
11  INC., AT&T, INC.,                 ORDER (DOC. 6, 8)
    COMMUNICATIONS WORKERS OF
12  AMERICA LOCAL 9333 UNION, AFL-
    CIO, COMMUNICATIONS WORKERS OF
13  AMERICA DISTRICT 9 UNION AFL-
    CIO, and DOES 1-1000,
14
               Defendants.
15

16

17                  1.   INTRODUCTION

18       Defendant Pacific Bell Telephone Company, Inc. ("PacBell")

19  moves to dismiss Plaintiff Christopher M. Souza's ("Souza") third

20  and fifth causes of action and to strike portions of Plaintiff's

21  complaint.  Oral argument was heard on March 10, 2008.

22                  2.   PROCEDURAL BACKGROUND

23       Plaintiff filed his complaint on December 12, 2007. (Doc. 2,

24  Complaint.)  Defendant PacBell filed its motion to dismiss on

25  January 30, 2008. (Doc. 6, Motion to Dismiss)  Defendant also

26  filed a motion to strike on January 30, 2008. (Doc. 8, Motion to

27  Strike)  Plaintiff moved for voluntary dismissal without

28  prejudice as to Defendants AT&T, Inc., AT&T Communications of

                                1

California and SBC Communications, Inc. on February 1, 2008.
(Doc. 10)  An order was entered by the Court on Plaintiff's
Voluntary Motion to Dismiss on February 14, 2008 dismissing
Defendants, AT&T, Inc., AT&T Communications of California and SBC
Communications, Inc. (Doc. 13)  Plaintiff filed an opposition to
Defendant's Motion to Dismiss on February 22, 2008. (Doc. 14,
Opposition MTD)  Plaintiff filed an opposition to Defendant's
Motion to Strike on February 22, 2008. (Doc. 15, Opposition MTS)
Defendant filed a reply to Plaintiff's Opposition MTD and
Opposition MTS on March 3, 2008. (Doc. 17, Reply)

### 3. <u>FACTUAL BACKGROUND</u>

    Plaintiff Souza brings a class-action suit against Defendant
PacBell, Defendant Communications Workers of America, Local 9333
Union AFL-CIO ("CWA") and Defendant Communications Workers of
America District 9 Union AFL-CIO ("District 9") alleging
violations of the Federal Family and Medical Leave Act, 29 U.S.C.
§ 2601 *et seq.* ("FMLA"), California Business and Professions Code
§ 17200, Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*
("FLSA"), California Labor Code § 226.7, breach of written
employment contract and breach of the duty of fair representation
(against CWA and District 9, or "Union Defendants," only).

    From on or about September 15, 1997 to on or about February
6, 2006, Plaintiff was employed, including as an office operator,
pursuant to a written employment agreement with Defendant
PacBell. (Doc. 2, Complaint, ¶ 20)  Plaintiff alleges that he
performed his duties and obligations under his employment
agreement, a collective bargaining agreement ("CBA") and
Defendant had full knowledge of his fulfillment of his duties and

2

conditions under his employment agreement. (*Id.*)  Plaintiff alleges that on or about February 6, 2006, he was terminated from his employment because Defendant alleged without any proof that based on computer inactivity Defendant had lied about assisting a customer on the telephone. (*Id.* at ¶ 21)  Plaintiff alleges that Defendant has implemented a program on its employees' computers that tracks keystrokes and computer use. (*Id.* at ¶ 22)  And based solely on an alleged report showing inactivity on Plaintiff's computer during a time frame in which he was assisting a customer on the phone, Defendant terminated Plaintiff. (*Id.*)  Plaintiff also alleges that Defendant, which is a phone company, asserted that it could not obtain phone records to verify Plaintiff was on the telephone during the time of the alleged inactivity. (*Id.*)

Plaintiff believes that he was also wrongfully penalized for requesting family and medical leave in October 2006 and Defendant PacBell is subject to the Family and Medical Leave Act. (*Id.* at ¶¶ 24, 26, 29)  Plaintiff alleges that he requested reassignment from Modesto to his home in Turlock, Stanislaus County, California so he could be with his sick and dying mother.  His request was denied and instead he was assigned further away to the Contra Costa County area and then he was terminated in December 2006. (*Id.* at ¶¶ 23, 27, 29)

Plaintiff asserts the Union Defendants did not file grievances on behalf of FMLA employees for unknown reasons and in violation of the duties to employees contracted for under the CBA. (*Id.* at 30)  Plaintiff also believes he was penalized for notifying his employer of job related stress, including seeking professional assistance with stress issues and therefore was made

3

an example of by being fired. (*Id.* at ¶ 24)   Plaintiff also believes he was penalized for his employment in a second job while off work and claims his second employment was prescribed by his therapist due to the hostile and stressful environment at PacBell.   PacBell confirmed the second employment by hiring an investigator who videotaped "a 'showing' of a property." (*Id.*) Plaintiff alleges that he was not on disability at the time of the videorecording and was not in the wrong for following his doctor's direction. (*Id.*)   Plaintiff alleges Defendants "had it out for him [Plaintiff] and they took the first opportunity they had to fire him after a long work history with the company." (*Id.*)

Plaintiff also alleges that Plaintiff and similarly situated employees were wrongfully reprimanded and/or terminated by Defendant for requesting meal lunch breaks and requesting overtime pay. (*Id.* at ¶ 35)   Plaintiff alleges that the work schedules for Plaintiff and similarly situated employees at the worksites do not generally permit and have not permitted, employees to take any meal periods and/or rest breaks.   And if work schedules permit such breaks, they are frequently interrupted and cut short by the demands of the job. (*Id.* at ¶ 44)   Defendant regularly denied and followed a routine practice to deny Plaintiff and similarly situated employees the opportunity to take meal and rest breaks.   During a normal workday, the employees were generally not permitted any full 10-minute rest periods or 30-minute meal periods despite requests. (*Id.* at ¶ 45)   When Plaintiff requested a break, Defendant's management employees denied the request and required Plaintiff to

continue working without a rest or meal break and on the rare occasion where a break was permitted, they required Plaintiff to work during the meal break. (*Id.* at ¶ 53)  Defendant is alleged to have violated the FLSA by failing to provide Plaintiff with adequate rest and meal breaks as mandated by law. (*Id.* at ¶ 36)

Plaintiff asserts that the written employment agreement obligated Defendant to continue Plaintiff's employment for an indefinite period of time for so long as Plaintiff fulfilled his duties and obligations under the contract. (*Id.* at ¶ 57) Plaintiff alleges that he performed all duties and conditions of the employment agreement and Defendant knew Plaintiff had fulfilled all his duties and conditions under the employment agreement but terminated Plaintiff without good cause in retaliation for requesting family and medical leave time to care for his sick mother and based on faulty computer reports that showed inactivity on his computer while he was assisting customers on the telephone. (*Id.* at ¶¶ 58-60)

Plaintiff alleges that Defendants CWA and District 9 arbitrarily, discriminatorily, or in bad faith failed or refused to properly represent union employees and recently notified Plaintiff after a year that it would not arbitrate this dispute. (*Id.* at ¶ 64)  Plaintiff also alleges that the Union Defendants failed to keep Plaintiff and those similarly situated informed about the status of their case. (*Id.* at ¶ 66)  Plaintiff alleges the Union Defendants failed to conduct a meaningful investigation with the assistance of Plaintiff and Union Defendants claim the phone records for the disputed time period are unavailable despite Defendant PacBell being a telephone company. (*Id.* at ¶

5

67)

Plaintiff alleges that as a result of his termination he was unable to continue his gainful employment, in which he was earning a $60,000 salary, and further benefits, including Team Performance Awards.  Plaintiff also lost related employment benefits including health care, retirement and other consequential damages. (*Id.* at ¶ 23)[1]

## 4. STANDARD OF REVIEW

A. Motion to Dismiss 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides that a motion to dismiss may be made if the plaintiff fails "to state a claim upon which relief can be granted."  However, motions to dismiss under Fed. R. Civ. P. 12(b)(6) are disfavored and rarely granted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In deciding whether to grant a motion to dismiss, the Court "accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences" in the light most favorable to the nonmoving party. *TwoRivers v. Lewis*, 174 F.3d 987, 991 (9th Cir. 1999); *see also Rodriguez v. Panayiotou*, 314 F.3d 979, 983 (9th Cir. 2002).  A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

The question before the court is not whether the plaintiff

---

[1] **Exhibit A to the Complaint referenced in the causes of action contains a partial copy of the employment agreement/CBA, setting forth provisions of Article 7, "Problem Resolution Procedures."**

will ultimately prevail; rather, it is whether the plaintiff could prove any set of facts in support of his claim that would entitle him to relief. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  "A complaint should not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Van Buskirk v. CNN, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (citations omitted).

**B. Motion to Strike 12(f)**

The Federal Rules of Civil Procedure do not provide for a motion to strike documents or portions of documents other than pleadings.  Rule 12(f) provides that "redundant, immaterial, impertinent, or scandalous matters" may be "stricken from any pleading." Fed. R. Civ. P. 12(f) (emphasis added).  A motion to strike is limited to pleadings. *See Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  However, a "motion to strike" materials that are not part of the pleadings may be regarded as an "invitation" by the movant "to consider whether [proffered material] may properly be relied upon." *United States v. Crisp*, 190 F.R.D. 546, 551 (E.D. Cal. 1999) (quoting *Monroe v. Board of Educ.*, 65 F.R.D. 641, 645 (D. Conn. 1975) ("[A] motion to strike has sometimes been used to call to courts' attention questions about the admissibility of proffered material in [ruling on motions].") (citations omitted)).

Motions to strike are disfavored and infrequently granted. *See Pease & Curran Refining, Inc. v. Spectrolab, Inc.*, 744 F. Supp. 945, 947 (C.D. Cal. 1990), *abrogated on other grounds by Stanton Road Ass'n v. Lohrey Enters.*, 984 F.2d 1015 (9th Cir.

7

1993).   Such motions should be granted only where it can be shown that none of the evidence in support of an allegation is admissible. *See id.*

### 5. DISCUSSION

Defendant PacBell moves to dismiss Plaintiff's third cause of action alleging violation of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, for failure to provide meal and rest breaks.   Defendant PacBell moves to dismiss Plaintiff's fifth cause of action for breach of contract.   Defendant PacBell also moves to strike portions of Plaintiff's second cause of action, Violation of California and Business Professions Code § 17200 *et seq.*, page 10, lines 23-24 and 26-28 that reference violation of the FLSA for the alleged failure to provide Plaintiff with adequate rest and meal breaks and portions of Plaintiff's fourth cause of action, violation of California Labor Code § 226.7, page 13, line 21 which reference violation of Federal law for failing to provide rest and meal breaks as required by Federal law.

A. Violation of Fair Labor Standards Act

Defendant PacBell moves to dismiss Plaintiff's third cause of action for violation of the FLSA, 29 U.S.C. § 201 *et seq.* Defendant claims that FLSA has no provision requiring the employer to provide meal and rest breaks.   If employers choose to offer rest and meal breaks then the law imposes an obligation on the employer.

Plaintiff's Complaint alleges the following with regard to its FLSA claim:

> 43. Defendants and each of them are subject to the Fair Labor Standards Act 29 U.S.C. section 201 et seq., and 28 U.S.C. section 1331.

**8**

44. The work schedules for Plaintiffs and similarly situated employees at these worksites generally do not permit, and have not permitted, them to take any meal periods and/or rest breaks.  Further, even when the work schedule may permit such breaks, such breaks are frequently interrupted and cut short by the demands of plaintiffs' jobs.

45. Defendants have regularly, and as a matter of routine practice, denied Plaintiffs and similarly situated employees the opportunity to take any meal and rest breaks, despite requesting same.  Consequently, during the course of a normal workday for these employees, they are generally not permitted any full 10-minute rest periods or 30-minute meal periods at all, despite request for same.

46. Plaintiff requests that this Court enter such orders or judgments as may be necessary to restore to any person in interest, any money which may have been acquired by means of such unlawful practices for the entire period upon which this practice was occurring even if it is found that it has been discontinued back up to four (4) years.

(Doc. 2, Complaint, ¶¶ 43-46)  Plaintiff does not assert that under his CBA he is required to receive meal period and rest breaks.

FLSA requires payment for overtime for all "hours worked" in excess of forty hours per week but it does not require employers to provide meal or rest periods. *See, e.g. Nelson v. Waste Management of Alameda County, Inc.*, 2000 WL 868523, at *3 (N.D.Cal. 2000) ("It does not require that an employer provide meal or rest periods.")[2]  If a "bona fide meal period" is

---

[2] Defendant notes that California Labor Code § 226.7 requires employers to provide employees with meal and rest periods as set forth by the applicable order of the Industrial Welfare Commission.  *See* Cal IWC Order Nos. 1-2001 through 17-2001. "[T]the right to meal periods and penalties [under California law] does apply, and has consistently applied, to workers covered by collective bargaining agreements." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1080 (9th Cir. 2005).

9

provided, the FLSA implementing regulations state the following:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

29 C.F.R. § 785.19(a).  Plaintiff has not alleged that he received meal periods that are interrupted, nor that he received meal periods where he was required to perform duties, nor that he was not paid for any such time period.

Plaintiff does not provide any case law or other legal authority to refute Defendant's contention.  Plaintiff however, requests leave to amend to allege that Plaintiff was required to work through meal times and break times and was therefore not properly compensated for working during that time.  Defendant argues in response that Plaintiff does not assert he has evidence of such conduct and Plaintiff may only plead violations for which he has a reasonable, good faith factual basis pursuant to Federal Rules of Civil Procedure 11(b)(3):

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery

Fed. R. Civ. P. 11(b)(3).

Defendant's Motion to Dismiss the third cause of action is GRANTED WITH PREJUDICE, except if Plaintiff can allege the CBA

required meal and rest breaks.

**B. Breach of Contract: Employment Agreement**

Defendant PacBell moves to dismiss Plaintiff's fifth cause of action for breach of Plaintiff's employment agreement. Defendant alleges that because Plaintiff's employment agreement is a CBA, application of state law is preempted by federal law principles under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.

Under 29 U.S.C. § 185(a), an individual employee may sue (1) an employer for breach of contract between the employer and (2) a union and the union for breach of its duty of fair representation. *DelCostello v. International Broth. of Teamsters*, 462 U.S. 151, 165 (1983). Section 185(a) provides, "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a).

Plaintiff alleges in his fifth cause of action:

> 57. Plaintiff is informed as believes and thereon alleges that the written contract of employment with Defendants to continue Plaintiff's employ for an indefinite period of time into the future and for so long as Plaintiff fulfilled his duties and obligations under the contract. (See <u>Exhibit A</u>, CBA 2004 Contract, Article 7, remainder too voluminous for inclusion as exhibit, incorporated by references as though fully stated herein.)
> 58. Plaintiff performed all the duties and conditions of the employment agreement.
> 59. Defendants knew that Plaintiff had fulfilled all his duties and conditions under the contract.

11

60. Plaintiff is informed and believes and thereon alleges that Defendants breached the aforementioned contract of employment by terminating Plaintiff's employ without good, just or legitimate cause, in retaliation for requesting family and medical leave time to care for his sick mother in Turlock, Stanislaus County.  In addition, Plaintiff and others similarly situated allege as stated hereinabove that the Defendants fired him without cause based on faulty computer reports that apparently showed inactivity when he was helping defendants' customers on the telephone with problems.  These issues could have been resolved but defendants claimed they could not locate the phone bills from that time period.

61. As a direct and proximate result of Defendants' breach of contract of employment, as aforesaid, Plaintiff has been deprived of the rights and benefits under the contract, including, but not limited to, continued compensation so long as Plaintiff performed all duties and conditions under the employment agreement and the right to bonuses (TPA's) which were earned and would have been paid had Defendants not unlawfully terminated Plaintiff's employ.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff has suffered the loss of contracted-for employment benefits, bonuses and suffered consequential economic loss, all to Plaintiff's damage in sum within the jurisdiction of this Court and to be shown according to proof.

(Doc. 2, Complaint, ¶¶ 57-62)

Section 301 of the LMRA provides federal jurisdiction over "[s]uits for violation of contracts between and an employer and a labor organization."  A suit for breach of a collective bargaining agreement is governed exclusively by federal law under Section 301. *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 23 (1983).  As explained in *Builders & Contractors v. Intern. of Elec. Workers*, 109 F.3d 1353 (9th Cir. 1997):

Federal law exclusively governs a suit for breach of a collective bargaining agreement under § 301 and preempts any state cause of action based on a collective bargaining agreement or whose outcome depends on analysis of the terms of the agreement ... Though preemption under § 301 of the LMRA is implied, not express, the policy in favor of national uniformity

12

in labor law is so powerful that it displaces state law
with respect to claims involving the interpretation or
enforcement of collective bargaining agreements ....

Although the language of § 301 is limited to '[s]uits
for violation of contracts,' it has been construed
quite broadly to cover most state-law actions that
require interpretation of labor agreements ... Many §
301 suits do not assert breach of the collective
bargaining agreement and are nevertheless held
preempted because they implicate provisions of the
agreement ....

*Id.* at 1356-1357; *see also Lingle v. Norge Div. of Magic Chef,
Inc.,* 486 U.S. 399, 405-06 (1988).

The "pre-emption rule has been applied only to assure that
the purposes animating § 301 will be frustrated neither by state
laws purporting to determine 'questions relating to what the
parties to a labor agreement agreed, and what legal consequences
were intended to flow from breaches of that agreement' ..., nor
by parties' efforts to renege on their arbitration promises by
'relabeling' as tort suits actions simply alleging breaches of
duties assumed in collective-bargaining agreements ..." *Livadas
v. Bradshaw,* 512 U.S. 107, 122-23 (1994).

In *Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683
(9th Cir. 2001), *cert. denied*, 534 U.S. 692 (2002), the Ninth
Circuit explained the demarcation between claims preempted by
Section 301 and those that are not:

If the plaintiff's claim cannot be resolved without
interpreting the CBA-as, for example, in
Allis-Chalmers, where the suit involved an employer's
alleged failure to comport with its contractually
established duties-it is preempted ... Alternatively,
if the claim may be litigated without reference to the
rights and duties established in a CBA-as, for example,
in Lingle, where the plaintiff was able to litigate her
retaliation suit under state law without reference to
the CBA-it is not preempted ... The plaintiff's claim
is the touchstone for this analysis; the need to
interpret the CBA must inhere in the nature of the

13

> plaintiff's claim. If the claim is plainly based on state law, § 301 preemption is not mandated simply because the defendant refers to the CBA in mounting a defense.
>
> Moreover, alleging a hypothetical connection between the claim and the terms of the CBA is not enough to preempt the claim: adjudication of the claim must require interpretation of a provision of the CBA. A creative linkage between the subject matter of the claim and the wording of the CBA is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credulity ... The argument does not become credible simply because the court may have to consult the CBA to evaluate it; 'look[ing] to' the CBA merely to discern that none of its terms is reasonably in dispute does not require preemption .... ...
>
> ... A state law claim is not preempted under § 301 unless it necessarily requires the court to interpret an existing provision of a CBA that can reasonably be said to be relevant to the resolution of the dispute.

*Id.* at 691-693.[3]

Plaintiff's employment agreement was by reason of his inclusion in a CBA and Plaintiff alleges he was terminated without good, just or legitimate cause.  The CBA specifically provides that an employee may be terminated only for just cause. *See* Exhibit A, § 7.12 ("If the arbitrator finds that a dismissal was made without just cause," the Arbitrator may reinstate the employee with back pay or reduce the dismissal to a suspension and reinstate employee without backpay.")  Further, Plaintiff sought redress for termination under the grievance procedures under his employment agreement, a CBA, through the union. Plaintiff's claim for breach of written contract is preempted

---

[3] "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a collective bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994).

under these standards as it does not state it was brought pursuant to § 301.  The 'for cause' requirement is set forth in the CBA and requires interpretation of that provision.  The Complaint for wrongful termination and breach of contract of the duty of fair representation require examination of the CBA's terms to determine the merits of Plaintiff's breach of contract claim, the fifth cause of action is preempted by Section 301.

Plaintiff rejoins that the fifth cause of action is properly pled under section 301 of the LMRA and that Defendant reads the cause of action too narrowly. (Doc. 14, Opposition, pp. 2:26-3:2) The cause of action does not mention that it is brought under the LMRA.  The fifth cause of action is titled "(Breach of Written Contract) Against All Defendants And Does 1-100."

Defendant also argues in response to Plaintiff's request for leave to amend his Complaint, that any claim under section 301 of the FMLA is untimely because section 301 has a six month statute of limitation. *DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151 (1983):

> In this case, however, we have available a federal statute of limitations actually designed to accommodate a balance of interests very similar to that at stake here-a statute that is, in fact, an analogy to the present lawsuit more apt than any of the suggested state-law parallels. FN20 We refer to § 10(b) of the National Labor Relations Act, which establishes a six-month period for making charges of unfair labor practices to the NLRB.

*Id.* at 169.  Because this is a "hybrid" action as described in *DelCostello*, where an employee sues the union and the employer, alleging that the employer unfairly treated the employee, and the union violated a duty of fair representation, the six-month limitation applies.  The *DelCostello* court however, did not

15

decide when the six-month period begins to run.  "The general rule is that § 10(b)'s six-month limitation period starts running when the plaintiff was or should have been aware of the acts constituting the alleged violation." *Proudfoot v. Seafarer's Intern. Union*, 779 F.2d 1558, 1559 (11th Cir. 1986).[4]

Ordinarily, however before an employee may bring a suit against his employer for breach of a collective bargaining agreement, the employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement. *DelCostello*, 462 U.S. at 163.  Therefore, "the timeliness of the suit must be measured from the date on which the employee knew or should have known of the union's final action or the date on which the employee knew or should have known of the employer's final action, whichever occurs later." *Proudfoot*, 779 F.2d at 1559 ("By final action we mean the point where the grievance procedure was exhausted or otherwise broke down to the employee's disadvantage.")  And because Plaintiff was terminated before the union initiated a grievance procedure and Plaintiff alleges the union breached it duty of fair representation, the timeliness of Plaintiff's suit is measured from the date Plaintiff knows or should have known the union breached its' duty. *Galindo v. Stoody Co.*, 793 F.2d 1502, 1510

---

[4] **In the context of the LMRA, which does not provide a statute of limitations, Courts have adopted the six month statute of limitations from the National Labor Relations Act, § 10(b), as amended, 29 U.S.C.A. § 160(b): "Provided, That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person against whom such charge is made..."**

(9th Cir. 1986).

Plaintiff asserts in his Complaint that he exhausted grievance and arbitration remedies and proceeded through the three-step grievance procedure provided in the CBA and it took the union a year to complete the process. (Doc. 2, Complaint, ¶ 68) The union declined to pursue Plaintiff's claim beyond the third step of the grievance procedure and refused to arbitrate the matter. (*Id.*) Plaintiff alleges in his Complaint that he was terminated on or about February 6, 2006. (*Id.* at ¶ 21) Defendant points to the notice of grievance procedures attached by Plaintiff as Exhibit A to the Complaint, which states that a third step grievance procedure must be appealed within 30 days. Defendant contends that regardless of when the union provided actual notice to Plaintiff, Plaintiff's claim began to accrue 30 days after his third step grievance was denied:

> Section 7.10 ARBITRATION PROCEDURES
> D. The Labor Relations Director, or designated representative, will send the final Company position letter to the National Union within five (5) calendar days of the National Union/Labor Relations meeting. Within thirty (30) calendar days following the National Union's receipt of the Companies' final position letter, as described in this Section 7.10D, the Union will notify the Companies in writing of its intention to arbitrate the grievance...If the Union does not notify the Companies in writing of its intention to arbitrate the grievance within the time limit stated (30 calendar days), and no mutual agreement to extend the time limit has been reached, the grievance will be considered withdrawn from the grievance process.

(Doc. 2, Complaint, Exhibit A, § 7.10D)

Defendant argues that assuming the process with the union and arbitration procedure extended for a year, the limitations period ran in either February 2007 or March 2007, at the latest and any section 301 LRMA claim began to run in February 2007.

17

Six months from February 2007 or March 2007 is August or September 2007.  The Complaint was filed on December 13, 2007, and according to Defendant is outside the six-month limitations period.  "[T]he timeliness of [a section 301 action] must be measured from the date on which the employee knew or should have known of the union's final action or the date on which the employee knew or should have known of the employer's final action, whichever occurs later." *Proudfoot*, 779 F.2d at 1559.

Plaintiff's Complaint however, does not describe events which provide any measuring dates from which to compute when the statute of limitations began to run, except for the vague statement that the process took about one year to complete with the union.  The Complaint does not state when the process began.  Plaintiff does not allege when the union provided actual notice to the Company of its decision not to arbitrate the grievance nor state facts concerning when Plaintiff knew or should have known of the union's final action.  Nor does Plaintiff provide this information in his Opposition to Defendant's Motion to Dismiss.

Plaintiff does state in his Opposition that equitable tolling applies in such suits.  Equitable tolling is permitted when "plaintiff is *required* to avail himself of an alternate course of action as a precondition to filing suit." *Conley v. International Broth. of Elec. Workers, Local 639*, 810 F.2d 913, 915 (9th Cir. 1987).  An example is when internal union procedures must be exhausted before a hybrid claim can be brought. *See Clayton v. Int'l Union, United Auto Workers,* 451 U.S. 679, 681 (1981).

In this suit, Plaintiff alleges that he filed a claim with

the California State Employment Development Department for unemployment compensation and that this claim is being pursued administratively through the U.S. Equal Employment Opportunity Commission (EEOC) and through the State of California Department of Fair Employment and Housing (DFEH).  None of these filings have an effect on a section 301 claim and none are *required* preconditions to filing a § 301 claim.  Similar to *Conley v. Int'l Broth. of Elec. Workers, Local 639*, 810 F.2d 913, 915-916 (9th Cir. 1987), where the Court stated that there may be room for the equitable tolling doctrine in applying section 10(b), it did not apply where Plaintiff alleged tolling applied because he was filing an action with the National Labor Relations Board. Like *Conley*, the filing of these claims with the EEOC and DFEH are "merely optional." *Id.* at 916.  The *Conley* Court found that allowing tolling for claims of pursuing unemployment benefits "would frustrate the national policy of prompt resolution of labor disputes." *Id.; see also Aragon v. Federated Dep't Stores, Inc.*, 750 F.2d 1447, 1454 (9th Cir. 1985) ("Equitable tolling should not be applied in a manner that frustrates national labor-management policy."); *Harris v. Alumax Mill Products, Inc., 897 F.2d 400, 404 (9th Cir. 1990)* (filing worker's compensation claim did not toll statute of limitations because it did not prevent plaintiff from filing section 301 action while pursuing worker's compensation claims and was not a *required* precondition to filing suit.)

    As Defendant acknowledges in its Reply brief, there is a possibility that the statute will be equitably tolled in the event that the union affirmatively misrepresented or misled

Plaintiff that it would continue to pursue his claims through the formal grievance procedures required by the CBA and therefore caused Plaintiff to fail to file suit. *See Plain v. AT&T Corp.*, 424 F.Supp.2d 11 (D.D.C. 2006); *Albright v. Virtue*, 273 F.3d 564 (3rd Cir. 2001); *Proudfoot v. Seafarer's Intern. Union*, 767 F.2d 1538 (11th Cir. 1985).[5]

Plaintiff generally alleges in his Opposition pleading: "In this case, equitable estoppel may also prevent the Defendant from arguing that the causes of action pled in this complaint ever 'accrued'..." (Doc. 14, Opposition, p. 4:14-15)  At oral argument, Plaintiff requested leave to amend as discovery is

---

[5] In *Plain v. AT&T Corp.*, 424 F.Supp.2d 11 (D.D.C. 2006), the union employee was not entitled to equitably toll the statutory period for filing suit against the employer for violation of a collective bargaining agreement even though the union failed to provide formal notification that her grievance was concluded.  Plaintiff needed to allege that the union engaged in affirmative misconduct that prevented her from pursuing her claim.  In a Third Circuit case, *Albright v. Virtue*, 273 F.3d 564 (3rd Cir. 2001), on summary judgment the court found a material issue of fact existed as to the time at which futility for the union to appeal the grievance became apparent.  Despite boilerplate language in a preprinted form that stated that a joint area committee decision would be final, conclusive, and binding with no appeal, the union through correspondence implied that appeals had been forwarded for review, which made it apparent that union members reasonably believed the union was undertaking an appeal for some of them. *See also Proudfoot v. Seafarer's Intern. Union*, 779 F.2d 1558 (11th Cir. 1986) and 767 F.2d 1538 (11th Cir. 1985) (question of fact existed as to whether union member should have known that union had taken final action on grievance despite letter stating employer was justified in taking action, because plaintiff was also told that the matter would be looked into, an additional letter was sent instructing plaintiff to contact and set up a meeting relating to plaintiff's complaint and plaintiff then received an offer of reinstatement).

continuing and there is uncertainty on the date Plaintiff was terminated which may result in the LMRA claim being with the statute of limitations.  The fifth claim shall be DISMISSED and Plaintiff is GRANTED LEAVE TO AMEND to properly plead facts suggesting the limitations period has not run or facts that toll the statute of limitation.

Defendant's motion to dismiss the fifth cause of action is GRANTED on the ground of LMRA § 301 preemption, 29 U.S.C. § 185.

C. Motion to Strike

Defendant PacBell also moves to strike under Fed. R. Civ. P. 12(f), portions of Plaintiff's Complaint on the basis that the allegations of the third cause of action, for failure to provide rest and meal breaks, fails to state a cause of action under the FLSA.  Defendant moves to strike portions of allegations in the second cause of action and fourth cause of action citing to these alleged violation because they are immaterial and impertinent. Defendant requests the following be stricken from the Complaint:

> 1. Second Count, Violation of California Business and Professions Code § 17200 *et seq.,* page 10, lines 23-24 and 26-28:
>
> "Defendant also breached the 2004 Contract made between Defendant Employer and Defendant Union in terminating the Plaintiff without just cause."
>
> "Finally, the Defendant violated the Fair Labor Standards Act by failing to provide the Plaintiff with adequate rest & meal breaks as mandated by law."
>
> 2. Fourth Count, Violation of California Labor Code § 226.7, page 13, line 21: "& Federal..."

Defendant's motion to strike these provisions is GRANTED.

//

//

21

CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss Plaintiff's third cause of action for violations under the FLSA is GRANTED WITH PREJUDICE, except if Plaintiff can allege the CBA required meal and rest breaks.  Defendant's motion to dismiss Plaintiff's fifth cause of action for breach of written contract is GRANTED WITH LEAVE TO AMEND.  Defendant's motion to strike portions of Plaintiff's Complaint is GRANTED. Plaintiff shall file an amended complaint within twenty (20) days following service of this decision by the clerk of the court.

IT IS SO ORDERED.

**Dated:     March 20, 2008**                              **/s/ Oliver W. Wanger**

UNITED STATES DISTRICT JUDGE